IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GEORGE A. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-558-SLR |
| | ) | |
| ROMAN CATHOLIC ARCHBISHOP OF WASHINGTON, a Corporation Sole of the District of Columbia, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| JOHN ROONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-565-SLR |
| | ) | |
| ROMAN CATHOLIC ARCHBISHOP OF WASHINGTON, a Corporation Sole of the District of Columbia and other Combined Entities, and ST. JOHN'S COLLEGE HIGH SCHOOL, | ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

---

Bartholomew J. Dalton, Esquire of Dalton & Associates P.A., Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: John C. Manly, Esquire and Michael Reck, Esquire of Manly & Stewart, Newport Beach, California.

Anthony G. Flynn, Esquire and Jennifer M. Kinkus, Esquire of Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Defendant Roman Catholic Archbishop of Washington. Of Counsel: Kevin T. Baine, Esquire and John M. McNichols, Esquire of Williams & Connolly LLP, Washington, DC.

Mark L. Reardon, Esquire and Penelope B. O'Connell, Esquire of Elzufon Austin Reardon Tarlov & Mondell P.A., Wilmington, Delaware. Counsel for Defendant St. John's College High School.

---

**MEMORANDUM OPINION**

Dated: August 26, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

The above captioned cases were filed in the Superior Court of the State of Delaware following enactment of the Delaware Child Victim's Act of 2007, 10 Del. C. § 8145, in which legislation opened a window of opportunity for litigants to assert claims involving alleged sexual abuse of children which occurred decades ago and otherwise would have been barred by Delaware's statute of limitations.[1] The cases at bar do not involve citizens of Delaware; rather, they involve alleged instances of sexual abuse of non-resident children by a non-resident priest during visits to Delaware. The defendants have moved to dismiss the cases for lack of personal jurisdiction. The question common to the pending motions is whether the assertion of personal jurisdiction by a court in Delaware is consistent with Delaware's long-arm statute and comports with Due Process.

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons that follow, the motion to dismiss filed by defendant the Archbishop of Washington is stayed pending limited jurisdictional discovery. The motion to dismiss filed by defendant St. John's College High School is granted.

## II. BACKGROUND[2]

### A. The Parties

Plaintiff George A. Thompson is a resident of Arizona. He has brought suit

---

[1] The above captioned cases were removed to this court pursuant to 28 U.S.C. §§ 1441 and 1446.

[2] As is proper upon a motion to dismiss, plaintiffs' allegations are taken as true as alleged in the complaint. See Traynor v. Liu, 495 F. Supp. 2d 444, 448 (D. Del. 2007).

against the Roman Catholic Archbishop of Washington, a "corporation sole" existing under the laws of the United States with its principal place of business in Hyattsville, Maryland (the "Archbishop of Washington").[3]

Plaintiff John Rooney is a resident of Virginia. He has brought suit against the Archbishop of Washington and St. John's College High School ("St. John's School"), a school organized under the laws of Washington, D.C. and having its principal place of business in Washington, D.C.[4] According to plaintiff Rooney, St. John's School is

---

[3]In addition to the Archbishop of Washington, plaintiff Thompson also named as defendants in his complaint the "Catholic Archdiocese of Washington, Inc." ("the Archdiocese") and St. John Baptist de la Salle Roman Catholic Church ("St. John Church"). The Archbishop of Washington asserts, without challenge by plaintiff Thompson, that it is the

> legal entity that conducts the temporal affairs of the Archdiocese of Washington. It is the only named defendant that is an existing legal entity. There is no such entity as the "Catholic Archdiocese of Washington, Inc." St. John Baptist de la Salle Roman Catholic Church is a parish within the Archdiocese of Washington; it is not a legal entity and has no separate and independent legal status apart from the Roman Catholic Archbishop of Washington, a Corporation Sole.

(Civ. No. 09-558, D.I. 1) Therefore, the caption has been amended to reflect that the Archbishop of Washington is the only remaining defendant in this case. Regardless of its legal status, the Archdiocese has been described as having its principal place of business in Maryland and as operating parishes there and in the District of Columbia. (Civ. No. 09-558, D.I. 6 at 3)

[4]In addition to the Archbishop of Washington, plaintiff Rooney named as defendants in his complaint the Archdiocese, St. John's School and St. Patrick's Catholic Church ("St. Patrick's Church"). The Archbishop of Washington asserts, without challenge by plaintiff Rooney, that

> [t]he Roman Catholic Archbishop of Washington, a Corporation Sole, is the legal entity that conducts the temporal affairs of the Archdiocese of Washington. There is no such entity as the "Catholic Archdiocese of Washington, Inc." St. Patrick's Catholic Church is a parish within the Archdiocese of Washington; it is not a legal entity and has no separate

2

"owned, operated and controlled by" the Archdiocese and is a "Roman Catholic School providing education to boys from ninth (9th) grade to twelfth (12th) grade." (Civ. No. 09-565, D.I. 1)

### B. Contact With Delaware

Both plaintiffs Thompson and Rooney claim that they suffered sexual abuse at the hands of R. Joseph Dooley, a/k/a Rev. Msgr. R. Joseph Dooley ("Dooley"), now deceased. According to plaintiffs, Dooley was assigned to St. John's Church and participated in faith-based educational programs at St. John's School.[5]

Plaintiff Thompson asserts that he was a parishioner at St. John's Church when he met Dooley. He alleges that he was taken by Dooley on three occasions between 1963 and 1967 (when Thompson was between the ages of 13 and 17) to a mobile home located in Frankford, Delaware, which was owned by Dooley and Father James Powderly. On these occasions, plaintiff Thompson claims that he was sexually molested.[6] (Civ. No. 09-558, D.I. 12, ex. 1 at ¶¶ 5, 7)

Plaintiff Rooney asserts that he was a student at St. John's School when he met

---

and independent legal status apart from the Roman Catholic Archbishop of Washington, a Corporation Sole.

St. John's College High School is a separate legal entity.

(Civ. No. 09-565, D.I. 1) Therefore, the caption has been amended to reflect two defendants, the Archbishop of Washington and St. John's School.

[5]The record is unclear as to what Dooley's relationship to St. Patrick's Church was.

[6]Plaintiff Thompson claims to have been sexually molested by Dooley on multiple occasions in the rectory of St. John's Church and elsewhere in Maryland during this time period. (Civ. No. 09-558, D.I. 12, ex. 1, ¶¶ 8, 9)

3

Dooley. He likewise alleges that he was taken by Dooley on at least twenty occasions between 1970 and 1972 (when Rooney was between the ages of 16 and 18) to Dooley's mobile home in Frankford, Delaware. On these occasions, plaintiff Rooney claims that he was sexually molested.[7] (Civ. No. 09-565, D.I. 17, ex. 1 at ¶ 4)

Both plaintiffs specifically aver that defendant the Archbishop of Washington had notice of Dooley's conduct. Plaintiff Thompson has averred that: (1) he "would call the rectory [at St. John's Church] and ask them to find out when Dooley would be coming to pick me up to go to [Delaware];" and (2) Father Dolan and Monsignor Brooks would see plaintiff in Dooley's bedroom at the rectory. (Civ. No. 09-558, D.I. 12, ex. 1, ¶¶ 5, 9) Plaintiff Rooney has averred that: (1) "[t]he Monsignor, other priests and the receptionist at St. Patrick's Rectory knew that Father Dooley and I would be going . . . to Dooley's trailer in Delaware because Dooley or I told them where we were going" and "Dooley would call St. Patrick's Rectory in Washington, D.C. to advise that he had arrived in Delaware;" and (2) "Father Powderly would peek into the bedroom in the morning and stare at" plaintiff and Father Dooley sharing the same bed. (Civ. No. 09-565, D.I. 17, ex. 1, ¶¶ 4, 5, 8)

### C. Theories of Recovery

Plaintiffs have directly asserted claims against defendants of gross negligence, grossly negligent supervision, grossly negligent hiring/retention, and grossly negligent failure to warn, train or educate. These claims are grounded on the theory that

---

[7]Plaintiff Rooney claims to have been sexually molested by Dooley on multiple occasions in the rectory of St. Patrick's Church in Washington, D.C. during this time period. (Civ. No. 09-565, D.I. 1, ¶ 24)

defendants breached a special duty because they knew, or should have known, of Dooley's abusive conduct but failed to: (1) disclose that plaintiffs were or may have been sexually harassed, molested and abused; (2) reasonably investigate, supervise and/or monitor priests; and (3) warn, train or educate plaintiffs and other minors about how to avoid such misconduct. According to plaintiffs, defendants had the ability to stop Dooley's sexual misconduct but failed to take reasonable steps and/or implement reasonable safeguards to protect plaintiffs and others from acts of unlawful sexual conduct by Dooley.

Plaintiffs further allege that defendants committed constructive fraud. In general, this theory of recovery revolves around defendants' alleged efforts to misrepresent, suppress and conceal their knowledge of Dooley's sexual misconduct. Defendants' failure to disclose the truth about Dooley induced people, including plaintiffs, to participate and financially support defendants and their related enterprises, at the same time preventing discovery of defendants' and Dooley's conduct and, thereby, failing to protect plaintiffs from Dooley's molestation.

Plaintiffs also assert that defendants are liable for intentional infliction of emotional distress. Plaintiffs contend that a reasonable person would not expect or tolerate defendants putting Dooley in charge of minors, therefore, defendants' conduct was "outrageous and extreme." Further in this regard, plaintiffs assert that defendants are liable for sexual battery and sexual harassment based on Dooley's conduct, that is, Dooley performed acts which were intended to, and did result in, harmful and offensive contact with intimate parts of plaintiffs, as well as making sexual advances, solicitations, requests, and demands for sexual compliance of a hostile nature.

Plaintiffs claim that the actions of defendants have caused each of the plaintiffs pain and suffering including, but not limited to, anxiety, embarrassment and emotional distress.

## III. STANDARD OF REVIEW

Rule 12(b)(2) directs the court to dismiss a case when the court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), a court must accept as true all allegations of jurisdictional fact made by the plaintiff and resolve all factual disputes in the plaintiff's favor. *Traynor v. Liu,* 495 F. Supp. 2d 444, 448 (D. Del. 2007). Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing, with reasonable particularity, that sufficient minimum contacts have occurred between the defendant and the forum to support jurisdiction.[8] *See Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987). To meet this burden, the plaintiff must produce "sworn affidavits or other competent evidence," since a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984).

To establish personal jurisdiction, plaintiff must show, by a preponderance of the evidence, that: (1) "there is a statutory basis for jurisdiction under the forum state's long-arm statute;" and (2) "the exercise of jurisdiction comports with the defendant's right to Due Process." *L'Athene, Inc. v. EarthSpring LLC,* 570 F. Supp. 2d 588, 590 (D. Del.

---

[8] "[C]ourts are to assist the plaintiff [in meeting his burden] by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 456 (3d Cir. 2003).

2008) (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984); *Reach & Assocs. P.C. v. Dencer*, 269 F. Supp. 2d 497, 502 (D. Del. 2003)). Delaware courts interpret Delaware's long-arm statute as "confer[ring] jurisdiction to the maximum extent possible under the Due Process Clause."[9] *Hercules Inc. v. Leu Trust & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480-81 (Del. 1992); *LaNuova D & B S.p.A. v. Bowe Co., Inc.*, 513 A.2d 764, 768 (D. Del. 1986); *see also Boone v. Oy Partek Ab*, 724 A.2d 1150, 1156-57 (Del. Super. 1997), *aff'd*, 707 A.2d 765 (Del. 1998). However, the jurisdictional analysis "must not be collapsed into a single constitutional inquiry." *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 370 n.3 (D. Del. 2008). Accordingly, personal jurisdiction over a defendant is only proper if it meets the requirements of Delaware's long-arm statute and, separately, comports with Due Process.

Pursuant to Delaware's long-arm statute, 10 Del. C. § 3104, a court may exercise personal jurisdiction over a defendant where the defendant or its agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business [in the State], engages in any other persistent course of conduct in the State or derives

---

[9]The court applies the Delaware long-arm statute consistent with Delaware state courts' interpretations. *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 700 (D. Del. 2001); *see also LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000).

substantial revenue from services, or things used or consumed in the State;[10]

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as a surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). Subsections (c)(1), (c)(2), (c)(3), (c)(5), and (c)(6) of the long-arm statute require a showing of specific jurisdiction. *See Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354-55 (D. Del. 2008); *G & G LLC v. White*, 535 F. Supp. 2d 452, 461 (D. Del. 2008); *Dencer*, 269 F. Supp. 2d at 503-05. In contrast, subsection (c)(4) of the long-arm statute requires a showing of general jurisdiction, that is, a showing that defendant or its agent, through more than minimum contacts, is "generally present" in the forum state. *See G & G LLC v. White*, 535 F. Supp. 2d at 461; *Shoemaker*, 556 F. Supp. 2d at 355.

If a defendant is found to be within the reach of the long-arm statute, the court then must analyze whether the exercise of personal jurisdiction comports with Due Process. *Shoemaker*, 556 F. Supp. 2d at 354. The exercise of personal jurisdiction comports with Due Process where "the defendant's conduct is such that it should 'reasonably anticipate being haled into court there.'" *L'Athene*, 570 F. Supp. 2d at 591 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Personal jurisdiction may be either specific or general. *Vikoma Int'l, Ltd. v. Oil Stop, Inc.*,

---

[10]The long-arm statute lists the subsection (c)(4) activities in the disjunctive, and the defendant need only engage in one for that subsection to apply. *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 374 (D. Del. 2008) (citing *Lanuova*, 513 A.2d at 769).

Civ. No. 92-573, 1993 WL 14647, at *2 (D. Del. Jan. 14, 1993). For the court to exercise specific personal jurisdiction consistent with Due Process, plaintiff's cause of action must have arisen from the defendant's activities in the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Woodson*, 444 U.S. at 297). For the court to exercise general personal jurisdiction consistent with Due Process, plaintiff's cause of action can be unrelated to the defendant's activities in the forum state so long as the defendant has "continuous and systematic contacts with the forum state." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1470 (D. Del. 1991); *Vikoma*, 1993 WL 14647 at *2.

## IV. DISCUSSION[11]

### A. General Jurisdiction

To the extent that plaintiffs rely on defendants' conduct[12] as a ground for the assertion of personal jurisdiction, clearly such conduct did not occur in Delaware. As noted above, the only conduct that occurred in Delaware was that of Dooley, to wit, the allegations that Dooley sexually molested plaintiffs in Delaware when plaintiffs were teenaged boys. There are no allegations that defendants ever: (1) conducted business in Delaware; (2) contracted with Delaware entities; (3) provided religious services in Delaware; (4) provided religious or educational training to Delaware residents; (5) mailed or solicited Delaware residents; or (6) had an interest in, used or possessed real

---

[11]The court assumes, for purposes of this motion practice, that the Delaware statute of limitations applies.

[12]In other words, plaintiffs' allegations of gross negligence, negligent supervision, negligent hiring/retention, negligent failure to warn and constructive fraud.

9

property in Delaware.

To put the point another way, plaintiffs have failed to meet defendants' challenge to personal jurisdiction with sufficient allegations to demonstrate that general personal jurisdiction over defendants might exist. Under these circumstances, jurisdictional discovery is not warranted. *See Hansen v. Neumueller*, 163 F.R.D. 471, 475 (D. Del. 1995). Such a conclusion is consistent with the principle that discovery should not be used "to conduct a fishing expedition in order to construct a basis for jurisdiction." *LivePerson, Inc. v. NextCard, LLC*, Civ. No. 08-062, WL 742617, *6 (D. Del. March 20, 2009).

### B. Specific Jurisdiction

To the extent that plaintiffs rely on tortious conduct that occurred in Delaware as the basis for assertion of personal jurisdiction, it follows that such conduct must be that of Dooley and that plaintiffs are basing their claims for intentional infliction of emotional distress, sexual battery and sexual harassment on an agency theory. When an act is offered as the basis for jurisdiction, Delaware law requires the act to have occurred within the scope of the agent's employment and the principal to have directed the act. *See Computer People, Inc. v. Best Int'l Group, Inc.*, Civ. No. 16648, 1999 WL 288119, at *8 (Del. Ch. April 27, 1999); *Applied Biosystems*, 772 F. Supp. at 1465-66. In this regard, plaintiffs assert the following facts: (1) Dooley was an agent of both defendants (employed as a priest by the Archbishop of Washington and held out as a mentor/teacher by St. John's School) and, thereby, allowed access to children by virtue of his relationship to said defendants; (2) both defendants knew of his propensities to

sexually molest children; (3) defendant the Archbishop of Washington had notice of Dooley's trips to Delaware with plaintiffs;[13] and (4) as the Catholic Chaplain to the Metropolitan Police and Fire Departments of Washington, D.C., Dooley's "work day for the Archdiocese of Washington never ended."[14]

It is evident that Dooley performed the claimed acts of sexual molestation for his own sexual gratification and not at the direction of the defendants.[15] Nevertheless, the question in the context of these cases is whether defendants knew of such sexual misconduct, knew of Dooley's trips to Delaware with teenaged boys where such sexual misconduct occurred, and did nothing to protect these boys from harm in Delaware. Because these plaintiffs have averred that defendant the Archbishop of Washington knew, or should have known, that Dooley was sexually molesting children **and** that Dooley was taking children on trips to Delaware, plaintiffs have satisfied the minimal

---

[13]As noted *supra*, plaintiffs allegedly informed the rectories at St. John's Church (no specific information linking St. John's Church with St. John's School) and St. Patrick's Church each time they traveled to Delaware with Dooley. They also claim that the "Monsignor" was aware of these trips.

[14]According to plaintiffs, Dooley would inform the Metropolitan Police and Fire Departments when he arrived in, and departed from, Delaware. There is no indication that Dooley actually responded to police and fire incidents, accidents and deaths from Delaware; i.e., he was not on call as a chaplain when he was in Delaware. To the extent, then, that plaintiffs are urging upon the court the theory that priests are never "off duty" (i.e., that priests do not have personal lives and, therefore, the scope of their employment is coexistent with all of their conduct), that theory still stands rejected. *See, e.g., Tichenor v. Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994); *Graham v. McGrath*, 363 F. Supp. 2d 1030, 1034-35 (S.D. III. 2005); *Tercero v. Roman Catholic Diocese of Norwich*, 48 P.3d 50, 58 (N.M. 2002).

[15]In a related proceeding also involving alleged sexual abuse by Dooley, counsel for plaintiffs conceded that the acts at issue were self-directed and not directed by the Archbishop. *Burns v. Roman Catholic Archbishop of Washington*, Civ. No. 09C-06-095 (Del. Super. Sept. 21 2009).

pleading requirements to conduct limited jurisdictional discovery as to defendant the Archbishop of Washington. The pleadings are deficient with respect to defendant St. John's School.

### C. Due Process[16]

On the record as it stands, the exercise of personal jurisdiction over defendant St. John's School would not comport with Due Process. There is no allegation that St. John's School had any presence in Delaware or was on notice that plaintiff Rooney was traveling to Delaware with Dooley; therefore, its alleged misconduct is limited to acts that occurred outside of Delaware. See, e.g., Tell v. Roman Catholic Bishop of Diocese of Allentown, Civ. Nos. 09C-05-171, 09C-06-196, 2010 WL 1691199, at *12 (Del. Super. April 26, 2010); Elliot v. The Marist Brothers of the Schools, Inc., 675 F. Supp. 2d 454, 459 (D. Del. 2009); Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 562-63 (8th Cir. 2003); Doe v. Roman Catholic Diocese of Boise, Inc., 918 P.2d 17, 23 (N. M. App. 1996). Accordingly, the court concludes that plaintiff Rooney has failed to allege sufficient facts to justify the exercise of personal jurisdiction over defendant St. John's School. Moreover, to allow plaintiff Rooney to pursue jurisdictional discovery against this defendant under the facts pled would amount to a fishing expedition.

### V. CONCLUSION

For the reasons stated, the motion to dismiss for lack or personal jurisdiction filed

---

[16]To the extent plaintiffs might suggest that President Judge Vaughn's bench ruling in Dingle v. Catholic Diocese of Wilmington, Civ. No. 07C-09-025, at *4 (Del. Super. October 5, 2009), changes the above analysis, the court rejects this suggestion. See Elliott v. The Marist Brothers of the Schools, Inc., et al., Civ. No. 09-611-SLR (D.I. ).

by defendant St. John's School (Civ. No. 09-565, D.I. 8) is granted. The motions to dismiss filed by defendant the Archbishop of Washington filed in both captioned actions (Civ, 09-558, D.I. 6; Civ. No. 09-565, D.I. 6) are stayed pending jurisdictional discovery. An order shall issue.